(97 App. Div. 58.)

### BLANCHARD v. SAVARESE et al.

(Supreme Court, Appellate Division, Second Department. July 28, 1904.)

1. MUNICIPAL CORPORATIONS — BUILDING CODE — EXCAVATION—NEGLIGENCE—ESTOPPEL.

Under New York Building Code, § 22, enacted pursuant to Greater New York Charter, § 647, providing that, whenever an excavation shall be intended to be carried or shall be carried more than 10 feet below the curb, the person making such excavation must, if afforded the necessary license, enter on the adjoining land at his own expense to preserve any adjoining wall, and to support the same so that it shall remain as safe as before the excavation was commenced, defendant, in an action for negligence in shoring up the wall of a building contiguous to an excavation, by reason of which the building fell, having requested a license of the adjoining owner to enter on his premises and support his wall, is thereafter estopped to say that he did not intend to go to a depth of more than 10 feet, though, according to the application filed in the bureau of buildings, the excavation was to have been only 5 feet, and the wall of the adjoining building fell before the depth of 10 feet was reached.

Woodward, J., dissenting.

Appeal from Trial Term, Westchester County.

Action by James A. Blanchard against Vincenzo Savarese and others. From a judgment for plaintiff for $1,500, and an order denying a motion for a new trial, defendants appeal. Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

Albert M. Yuzzelino (Lorenzo Ullo, on the brief), for appellants.
Isaac N. Mills, for respondent.

WILLARD BARTLETT, J. The plaintiff was the tenant of a factory building in the borough of Brooklyn, under a written lease. The defendants were the owners of an adjacent lot, on which they proposed to make an excavation, which, according to the application filed in the bureau of buildings, was to have been only 5 feet below the curb. Under section 22 of the New York Building Code, whenever an excavation shall be intended to be carried or shall be carried to a depth of more than 10 feet below the curb, the person or persons causing such excavation to be made are required at all times from the commencement until the completion thereof, if afforded the necessary license to enter upon the adjoining land, and not otherwise, at his or their own expense, to preserve any adjoining or contiguous wall or walls, structure or structures, from injury, and to support the same by proper foundations, so that they shall remain practically as safe as before the excavation was commenced. Building Code, enacted pursuant to section 647 of the Greater New York charter.

After the defendants had begun the excavation on their lot, they applied to the plaintiff for permission to enter upon the factory property occupied by him and support the wall thereof. The plaintiff communicated with his landlord, the owner, who said it was all right, and the plaintiff then directed his foreman to tell the defendants or their representative that they could come in on the factory property and do anything they pleased. The plaintiff subsequently saw one of the defendants, Mr. Vincenzo Savarese, and complained to him that the wall was not being safely supported—calling his attention to a large opening therein—in response to which Savarese said: "That is all right. If there is anything wrong, I will attend to it." On the next day after this interview the wall collapsed. In the present action the plaintiff has recovered damages for the injury to his goods, and for loss of profits in his business, occasioned by the negligence of the defendants in failing properly to sustain the factory wall.

It will be observed that under the New York Building Code the obligation to sustain an existing wall adjoining land upon which an excavation is proposed to be made, exists not only where the excavation is actually carried to a depth of more than 10 feet below the curb, but also where the intention is to carry it to such depth. The evidence of such intention is naturally to be found in the declarations or actions of the parties who propose to make the excavation. They may say in so many words that they mean to carry it to a depth in excess of 10 feet. If they said so to. the owner of the adjoining building, and accompanied the statement by a request for a license to enter his premises, under the Building Code, the adjacent owner would be obliged to afford such license or suffer the consequences. But the intention may be

manifested by implication as well as by express declaration. An adjacent owner can hardly be expected to search in the records of the bureau of buildings in order to ascertain whether his neighbor means to dig more than 10 feet below the curb or not. If that neighbor, having no occasion or right whatever nor any obligation to come upon his premises or support his wall unless he intends to excavate more than 10 feet below the curb, applies to him for permission to come into his building and shore up the wall, and proceeds actually to avail himself of such permission and undertakes to work, it seems to me that these circumstances are equivalent to an expressly declared intention to carry the excavation to a greater depth than 10 feet. It follows that if the proprietor of a building acts upon this implied declaration and representation, and affords the necessary license, such action resulting in his injury, the persons who have thus obtained permission to enter are estopped on the plainest principles of equity from denying their purpose to excavate below the stated depth. They had no business upon his premises unless they intended so to excavate. Having obtained access thereto by reason of their implied avowal to that effect, and having negligently injured him by failing properly to do the work which they undertook to do, they should not be permitted to escape liability for their negligence by now saying that they never intended to dig more than 5 feet below the curb. I think that this judgment is right, and should be affirmed.

Judgment and order affirmed with costs. All concur, except WOODWARD, J., who dissents.

WOODWARD, J. (dissenting). I cannot see my way clear to concur in the above decision. It is not to be doubted that at common law the defendants owed the plaintiff no duty, under the facts disclosed in this case, to afford support for the ground, with the superimposed burden of the building. The natural right of support, as between the owners of contiguous lands, exists in respect of lands only, and not in respect of buildings or erections thereon. Panton v. Holland, 17 Johns. 92, 8 Am. Dec. 369; Thurston v. Hancock, 12 Mass. 221, 7 Am. Dec. 57; Humphrey v. Boyden, 12 Q. B. 139; Goddard on Easements, 31. The owner of land, however, in making excavations on his own premises which may endanger a building on his neighbor's land, is bound to use reasonable care in the prosecution of his work, and is liable for injuries to his neighbor's property resulting from his negligence. But he is under no obligation to shore up his neighbor's house; nor is there any duty, arising from contiguity, merely, that he should give his neighbor notice of his intention to excavate on his own premises. Dorrity v. Rapp, 72 N. Y. 307, 310; White v. Nassau Trust Co., 168 N. Y. 149, 155, 61 N. E. 169, and authorities there cited.

The rule of the common law is modified, however, by the provisions of section 22 of the Building Code of the city of New York, enacted under the provisions of section 647 of the Greater New York charter, which provides that, whenever an excavation shall be intended to be carried or shall be carried to a depth of more than 10 feet below the curb, the person or persons causing such excavation to be made shall at all times from the commencement until the completion thereof, if af-

forded the necessary license to enter upon the adjoining land, and not otherwise, at his or their own expense, preserve any adjoining or contiguous wall or walls, structure or superstructure, from injury, and support the same by proper foundations so that they shall remain practically as safe as before the excavation was commenced. The plaintiff attempted to bring the case within this provision of the Building Code by alleging that it was intended to make an excavation more than 10 feet in depth, but the evidence wholly fails to support any such allegation, and it is practically conceded that the defendants did not intend to go below about 7 feet from the curb line. They did, however, after the work of excavating had been commenced, go to the plaintiff and request permission to go upon the latter's premises for the purpose of shoring up the plaintiff's building, and this privilege was granted. The defendants did some work in shoring up the building, in a perfectly proper manner, so far as appears from the evidence, for it is not contended that the building fell because of the work which was thus done, but in spite of it. The decision about to be made supports the judgment in favor of the plaintiff upon the theory that, the defendants having asked and received permission to go upon the plaintiff's premises for the purpose of shoring up the latter's building, they undertook to do all that the law made it the duty of the plaintiff to do under the circumstances of this case, and to preserve the walls of the plaintiff's building. And although it is clearly shown by the evidence that the defendants did not intend to excavate more than 7 feet below the curb line, the judgment is to be sustained on the theory that the defendants, by asking permission to go upon the premises of the plaintiff for the purpose of shoring up the building, impliedly represented to the plaintiff that they intended to go more than 10 feet below the curb, and thus assumed liability for the work at all times. No such theory was presented to the trial court. The case went to the jury upon the proposition that the defendants, having undertaken to shore up the building, were liable for negligence if they failed to shore it up sufficiently to preserve it, even if there was no negligence in the manner of performing that portion of the work which they undertook to do, and not upon any idea that there was an implied representation bringing the defendants within the provisions of the Building Code. As I read that Code, it merely provides that, if a man intends to make an excavation more than 10 feet in depth, he is liable for injury to the adjoining property which results from that excavation before reaching the intended depth. That is, if he intended to go 15 feet below the curb line, and the injury occurred when the excavation had only reached 7 feet, the excavator would be liable, because the intention to go more than 10 feet in depth relieved the neighbor of any duty to protect his own property. On the contrary, if the defendants only intended to dig 7 feet below the curb, the duty was upon the plaintiff at all times to protect his own property, and the mere fact that the defendants asked and received permission to go upon the plaintiff's premises to shore up his building does not warrant the conclusion, in my judgment, that they thereby represented that they intended to do what they did not intend, or that they assumed any other obligation than that of using due care in the performance of the details of any work which they undertook not to injure the property of the plaintiff. The inference is quite as likely that the defend-

ants asked the permission to go upon the plaintiff's premises for the purpose of discharging the duty of the master to provide a reasonably safe place for their employés to work, as it is that they made any representation as to their intention. When the defendants asked this permission, it gave the plaintiff personal notice that the excavation was going on, and that it might involve the safety of his premises. A little inquiry on the part of the plaintiff would have developed the fact that the defendants did not intend to bring themselves within the provisions of the Building Code; and it appears entirely clear to me that the plaintiff could not close his eyes to the situation, and rely upon the defendants to absolutely protect him, in the absence of a specific and obligatory contract for that purpose. While the defendants, having asked and received permission to go upon the plaintiff's premises for the purpose of shoring up the building, were liable for any neglect in the performance of the work which might result to the plaintiff's injury, I am of opinion that they were not liable for an error in judgment as to the amount of such work which was necessary, or for a failure to do more than was done. They were liable for the work which they did do, if that produced injury; but to hold them as insurers of the plaintiff's goods, where there was no duty imposed by law, and where the positive duty was imposed upon the owner or owners of the premises to "preserve the same from injury, and so support the same by proper foundations that it or they shall be and remain practically as safe as before such excavation was commenced, and shall be permitted to enter upon the premises where such excavation is being made for that purpose when necessary" (section 22, New York Building Code), is carrying the doctrine of negligence beyond any point sanctioned by authorities controlling here. In the somewhat analogous case of Wynne v. Haight, 27 App. Div. 7, 50 N. Y. Supp. 187, the court say:

"Even if she had promised to make repairs, she would not have been liable for her failure to keep that promise, it being without consideration. Still less was she liable for a partial failure in that regard. Clearly she is not liable merely because she only kalsomined what she had agreed to repair, if she would not have been liable in case of complete nonaction. It is not the landlord's negligence, in the sense in which that word is commonly used, which makes him liable—that is, in not fully doing what he has voluntarily promised to do—but his active and direct negligence with regard to the subject-matter of his undertaking. His negligent act must be the real cause of the injury, and it is for that alone that he is liable."

It is not claimed here that there was any contractual relation between the defendants and the plaintiff, by which the former undertook to protect the latter, as by an insurance; but the whole case is based upon the theory that, when the defendants entered upon the premises of the plaintiff for the purpose of shoring up the building, they assumed the responsibility which the New York Building Code places upon the owner of premises who is about to excavate to a depth of more than 10 feet below the curb, and that a failure to absolutely protect the plaintiff's premises constitutes negligence. I think this constitutes error of law entitling the defendants to a reversal of the judgment; this question being raised by defendants' motion to dismiss at the close of the evidence, by their request for the direction of a verdict, and by their exception to the charge of the learned trial court.